CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

SEP 12 2017

JULIA C. DUDLEY, CLERK
BY: /s/ Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| RAUF ABDUL SALAM, | ) | Criminal Action No. 7:12CR00073 |
| | ) | (Civil Action No. 7:16CV81210) |
| Defendant, | ) | |
| | ) | **MEMORANDUM OPINION** |
| v. | ) | |
| | ) | By: Hon. Glen E. Conrad |
| UNITED STATES OF AMERICA. | ) | United States District Judge |

Rauf Abdul Salam, a federal inmate proceeding pro se, has moved to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. The government has filed a motion to dismiss, arguing that Salam has not raised any issues entitling him to relief. Salam has responded, making this matter ripe for consideration. Upon review of the record, the court concludes that the government's motion to dismiss must be granted.

I.

On March 21, 2013, a grand jury returned an indictment, charging Salam with conspiracy to distribute and possess with intent to distribute 1,000 grams or more of a mixture or substance containing heroin, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A) and 846. On April 22, 2013, Salam was arraigned, formally advised of the charges against him and the maximum penalties that he faced, and appointed counsel, Seth Weston. On May 31, 2013, however, he moved for the appointment of new counsel because he was dissatisfied with services rendered. Motion at 1, ECF No. 76. This motion was granted and he was appointed new counsel, L. Brad Braford. ECF No. 81. Braford moved to withdraw after learning of a potential conflict of interest, ECF No. 84, and Jack Gregory was appointed to represent Salam. ECF 88. On September 12, 2013, Salam again moved for new counsel, but the motion was denied. ECF No. 112. Gregory moved to withdraw, and this motion was granted. ECF No. 145. On December

19, 2013, Salam was appointed a fourth counsel, Paul Beers. ECF No. 162. On February 26, 2014, the government filed a notice of enhancement under 21 U.S.C. § 851, noting that because Salam previously had been convicted of a felony drug offense, he faced a mandatory minimum term of incarceration of 20 years. Notice at 1, ECF No. 182. At some point prior to trial, the government presented Salam with a written plea offer that provided for a sentence of 14 years' (168 months') incarceration. Salam did not accept the plea offer. Prior to proceeding to trial, the court held a hearing, pursuant to Lafler v. Cooper, 566 U.S. 156 (2012), and Missouri v. Frye, 566 U.S. 134 (2012), to ensure that Salam did, in fact, wish to proceed to trial instead of accepting a plea offer. Mot. Hr'g Tr. at 19, ECF No. 268. Salam assured the court that he was aware of the 14-year plea offer, but was not interested in accepting it. Id.

Instead, Salam proceeded to trial on April 7, 2014. The jury found him guilty. Verdict at 1, ECF No. 216. A presentence investigation report ("PSR") was created in anticipation of sentencing. The PSR recommended that Salam be considered a career offender, based on his criminal history. PSR ¶ 46, ECF No. 265. As a result of that designation, the PSR recommended an advisory guideline range of 360 months' incarceration to life. Id. ¶ 85. At Salam's sentencing hearing, however, defense counsel argued that because Salam's predicate offenses had occurred long ago, the court should "consider his criminal history . . . overstated and . . . ignore the career offender guidelines." Sent. Hr'g Tran. at 14, ECF No. 272. The court agreed with defense counsel that it would not be "fair to treat [Salam] as a career offender" and that a "depart[ure]" was warranted. Id. at 22. Accordingly, the court sentenced Salam to 292 months' incarceration. Id. at 32.

Salam appealed, challenging his conviction and sentence, arguing that the court erred by admitting testimony from a drug trafficking expert, by refusing to give a jury instruction

regarding multiple conspiracies, by refusing to grant a mistrial based on improper closing argument statements, and by applying a leadership role enhancement. The United States Court of Appeals for the Fourth Circuit affirmed. United States v. Salam, 611 F. App'x 110 (4th Cir. April 15, 2015) (unpublished). The Supreme Court of the United States denied Salam's petition for writ of certiorari on November 16, 2015. Salam v. United States, 136 S. Ct. 523 (2015). On November 10, 2016, Salam executed this § 2255 motion, arguing that he received ineffective assistance because counsel did not adequately advise him of the benefits of accepting a plea agreement and the perils of proceeding to trial. § 2255 Mot. at 5, ECF No. 339.

## II.

To state a viable claim for relief under § 2255, a petitioner must prove: (1) that his sentence was "imposed in violation of the Constitution or laws of the United States;" (2) that "the court was without jurisdiction to impose such a sentence;" or (3) that "the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). Salam bears the burden of proving grounds for a collateral attack by a preponderance of the evidence. Miller v. United States, 261 F.2d 546, 547 (4th Cir. 1958).

### A. Ineffective Assistance Legal Standard

Salam argues that he received ineffective assistance of counsel and the proper vehicle for raising such a claim is by filing a § 2255 motion. United States v. Baptiste, 596 F.3d 214, 216 n.1 (4th Cir. 2010). However, ineffective assistance claims are not lightly granted; "[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the [proceeding] cannot be relied on as having produced a just result." Strickland v. Washington, 466 U.S. 668, 686 (1984). Accordingly, in order to establish a viable claim of ineffective assistance of counsel, a defendant

3

must satisfy a two-prong analysis showing both that counsel's performance fell below an objective standard of reasonableness and establishing prejudice due to counsel's alleged deficient performance. Strickland, 466 U.S. at 687. When considering the reasonableness prong of Strickland, courts apply a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689; Gray v. Branker, 529 F.3d 220, 228-29 (4th Cir. 2008). Counsel's performance is judged "on the facts of the particular case," and assessed "from counsel's perspective at the time." Strickland, 466 U.S. at 689, 690.

To satisfy the prejudice prong of Strickland, a defendant must show that there is a reasonable probability that, but for counsel's unprofessional error, the outcome of the proceeding would have been different. Id. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694.

### B. Salam's Ineffective Assistance of Counsel Claim

Salam argues that counsel provided ineffective assistance because he did not explain to Salam the full extent of his sentence exposure. Specifically, Salam argues that counsel provided bad advice by failing to explain that he would likely be considered a career offender, based on his criminal history, which would increase his guideline range, and by failing to explain the sentencing ramifications of the § 851 notice filed by the government. Salam asserts that had he known his true sentence exposure, he would not have gone to trial but would have accepted the plea offer.

Salam's argument is without merit. First, he was apprised, on numerous occasions, of the maximum possible sentence that he faced. At his initial appearance, the government informed Salam that "the possible penalties you face for this are a mandatory minimum ten years, a maximum life imprisonment. However, if you have any prior drug-trafficking crimes or any

4

other serious drug crimes in the past, the government could file an enhancement . . . and the mandatory minimum would go from ten years to 20 years" with a maximum of life imprisonment. Int. App. Hr'g Tr. at 9, ECF No. 167. When asked whether he understood the penalties that he faced, Salam affirmed that he did. Id. at 10. Salam's statements "constitute a formidable barrier" to this post-judgment attack. Blackledge v. Allison, 431 U.S. 63, 74 (1977).

In addition, Salam appeared for a pretrial motions hearing during which the potential penalties that Salam faced were discussed. At the hearing, defense counsel noted that the government had filed a § 851 notice, "subjecting [Salam] to a 20-year mandatory minimum." Mot. Hr'g Tr. at 4, ECF No. 268. Counsel went on to state, "frankly, [Salam] will [face] over 20 years under the guidelines." Id. Counsel explained that in anticipation of an § 851 enhancement notice, he had treated the case as though Salam could face a mandatory life sentence, but the government limited its enhancement to a mandatory minimum sentence of twenty years. Id. These discussions took place while Salam was in the courtroom.

Furthermore, the government presented an affidavit from Beers, Salam's last counsel, averring that he advised Salam about his potential guidelines sentence and the § 851 enhancement. In the affidavit, Beers stated that he told Salam that "he could easily receive a sentence in excess of 25 years, particularly because of his prior convictions for narcotics offenses," and that with the § 851 enhancement filed by the government, he faced a mandatory minimum of 20 years' incarceration if found guilty. Beer Aff. ¶ 9, ECF No. 349-1. Accordingly, the record is replete with evidence that Salam understood his maximum sentence exposure and that he faced an § 851 enhancement but opted—as was his constitutional right—to proceed to trial instead of accepting a plea offer. Cf. United States v. Ray, 547 F. App'x 343, 345-46 (4th Cir. 2013) (unpublished) (noting that when the record is "bare" regarding counsel's

advice with regard to sentencing exposure, an evidentiary hearing may be warranted). Therefore, the court concludes that Salam has not established that counsel's performance fell below an objective standard of reasonableness. Strickland, 466 U.S. at 688.

Contrary to Salam's assertions, there is also plenty of evidence in the record that Salam understood that the government had offered a 14-year plea deal, but that he was not interested in accepting it. Salam argues, in his reply brief, that he never saw a plea agreement, and that Gregory, his attorney at the time, merely showed him an email from the government suggesting that it would accept a plea of 188 months (15 years 8 months) but the offer expired within 24 hours. However, it is clear from the record that further plea negotiations were not pursued by Salam's various counsel because he was not interested in pleading guilty. His claim that he was not provided an adequate opportunity to consider and accept a plea offer is belied by the Lafler/Frye inquiry conducted by the court.

At the end of the pretrial motions hearing, the court inquired into whether Salam did, in fact, wish to proceed to trial. Mot. Hr'g Tr. at 19, ECF No. 268. The government wanted to put "on the record that Mr. Salam is certainly aware of his options to plead and he has knowingly and intelligently refused to do so." Id. The court then asked Salam whether he was aware that an "approximately 14-year" plea had been offered and whether he discussed it with his counsel. Id. at 20. Salam answered in the affirmative but stated that he would not accept a plea. Id. Salam's declaration in open court affirming his understanding of the plea offer caries "a strong presumption of verity." Blackledge, 431 U.S. at 74.

Additionally, in his affidavit, Beers also affirmed that he discussed the benefit of a plea deal with Salam; he noted that although the plea offer from the government had lapsed by the time he began representing Salam, he "advised Salam that [Salam] should seriously consider

6

authorizing me to ask the government to re-offer the rejected, 14-year deal or another agreement rather than risk receiving a much longer term of imprisonment." Beers Aff. ¶ 7, ECF No. 349-1. Beers declared that Salam told him that Salam was not interested in pleading guilty. Id. ¶ 8.

Because Salam, on the record, affirmed numerous times that he understood the penalties that he faced and was aware of the plea offer provided to him by the government, but chose instead to proceed to trial, his claim that he did not understand the extent of the benefit that he would have received from the proposed plea agreement is not credible. See Merzbacher v. Shearin, 706 F.3d 356, 367 (4th Cir. 2013) (noting on collateral attack that a defendant's claim that he would have accepted a plea agreement but for counsel's deficient advice must be credible from the record). Salam has failed to establish either deficient performance on the part of his counsel or prejudice. Strickland, 466 U.S. at 687.

### III.

For the reasons stated herein, the court will grant the government's motion to dismiss. An appropriate order will be entered this day.

**ENTER:** This 12th day of September, 2017.

United States District Judge